Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all relevant times an employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. Defendant-employer is self-insured.
4. Plaintiff's date of injury is February 7, 1995 and plaintiff was terminated on May 12, 1995.
5. Plaintiff received $3,614.00 in unemployment benefits and should plaintiff recover compensation in this matter, defendant-employer is entitled to a credit for the same.
6. Should plaintiff recover compensation in this matter, defendant-employer is entitled to reimbursement in the amount of one-half of the expense paid for the mediator's fee, totaling $475.00.
In addition, the parties stipulated into evidence the following:
 1. Forms 18 and 19, which were submitted after the hearing before the Deputy Commissioner.
 2. A notebook containing stipulated medical records and reports, which were also submitted after the hearing before the Deputy Commissioner.
The Pre-Trial Agreement dated February 10, 2000 which was submitted by the parties is incorporated by reference.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is forty-four years old, was hired by defendant in April 1994. Defendant manufactured shirts, and during 1994 plaintiff performed various sewing jobs, including topstitching, sewing collars, bar tacking, five stitching and blind joining. During the three months prior to the incident in question, plaintiff blind joined executive shirts. The job involved reaching to the left to get the back and one front side of a shirt, folding and sewing them together at the shoulder, reaching again to the left for the other front section, folding and sewing it to the back section, and then folding the shirt and stacking it in a pile to plaintiff's right. The shirts came in bundles of seventy-five and plaintiff would sew up to three bundles in an hour.
2. Prior to February 7, 1995, plaintiff had no problems with her left shoulder. While working at her sewing machine that day, plaintiff reached down to throw away a piece of paper and scraped her left thumb against a screw below her machine. Plaintiff sustained a cut to her thumb. Plaintiff's supervisor got a band-aid for her and plaintiff returned to work. However, plaintiff later began to feel weak and ill.
3. On February 9, 1995 plaintiff went to the outpatient health clinic at Womack Army Hospital and saw Scott Arcand, a physician's assistant. Plaintiff described her injury at work, told him that her left arm had been aching and weak since that time and reported symptoms of malaise, mild chills, cough and some pain in her chest. Mr. Arcand diagnosed plaintiff with bronchitis and viral gastroenteritis and treated her with an antibiotic. When plaintiff returned on February 14, 1995 she was feeling better except that she continued to have pain in her left shoulder with certain movements. Mr. Arcand prescribed Motrin for plaintiff on that occasion and took her out of work until February 20, 1995. He then indicated that plaintiff should work with restrictions as determined by the company doctor, Dr. Jack Galbraith.
4. Plaintiff saw Dr. Galbraith on February 14, 1995. He noted pain over the left bicipital tendon and treated plaintiff with medication and rest. On February 28, 1995 Dr. Galbraith put plaintiff on two weeks of rest, however, when Dr. Galbraith released plaintiff to return to work, her symptoms worsened. Consequently, Dr. Galbraith referred plaintiff to Dr. Traynham, an orthopedic surgeon.
5. Dr. Traynham examined plaintiff on March 29, 1995 and noted that she had lost range of motion of the left shoulder at that time. Dr. Traynham injected the subacromial bursa, which gave plaintiff symptomatic relief. Plaintiff's symptoms returned by the next office visit on April 7, 1995, however. Dr. Traynham then prescribed physical therapy and medication for plaintiff and continued to limit her to light work.
6. Dr. Traynham advised plaintiff on April 7, 1995 that he could not relate her shoulder problem to her left thumb injury, and she did not return to him for further treatment after that date. Plaintiff went back to Mr. Arcand and asked him to refer her to an orthopedic surgeon for another opinion.
7. Plaintiff was then referred to Dr. McFarlane who examined her on June 6, 1995. On examination, there was significant tenderness over the bicipital tendon and significant loss of motion. Dr. McFarlane ordered an MRI and advised plaintiff to limit the use of her left arm. The MRI suggested a possible partial tear of the rotator cuff. Dr. McFarlane recommended conservative treatment, specifically physical therapy. Plaintiff's symptoms persisted despite the treatment so Dr. McFarlane ultimately performed surgery on September 6, 1996. No rotator cuff tear was found during the operation so he simply decompressed the subacrominal space.
8. Plaintiff then had further physical therapy. On January 23, 1997 Dr. McFarlane determined that plaintiff had reached maximum medical improvement and gave permanent work restrictions. He subsequently rated plaintiff with a ten percent permanent partial disability to her left shoulder.
9. On February 7, 1995 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant when she cut her thumb on the screw. Plaintiff missed no time out of work as a result of the thumb injury. The rotator cuff problem for which plaintiff was subsequently treated was not caused by the thumb injury.
10. In the alternative, plaintiff has claimed that her rotator cuff problem constituted an occupational disease. Although Dr. McFarlane testified that someone doing repetitive work such as plaintiff's job could have a rotator cuff lesion, his testimony was not sufficient to establish that plaintiff was placed at an increased risk of developing a rotator cuff problem by her employment duties with defendant as compared to the general public not so employed. Nor did Dr. McFarlane indicate specifically that plaintiff's job duties were a significant contributing factor in the development of her rotator cuff condition.
11. Plaintiff has not proven by the greater weight of the medical evidence that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On February 7, 1995 plaintiff sustained an injury by accident to her thumb arising out of and in the course of her employment with defendant-employer. However, the rotator cuff condition for which plaintiff was subsequently treated was not a proximate result of the accident. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff has no occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
3. Therefore, plaintiff is not entitled to benefits under the Workers' Compensation Act for her rotator cuff condition. N.C. Gen. Stat. § 97-2et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. This claim must, under the law, be and it is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day October 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER